1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ROBERT MITCHELL,

11              Plaintiff,                    No. CIV S-06-2321 GEB GGH P

12        vs.

13   D.G. ADAMS, et al.,                      <u>ORDER</u>

14              Defendants.

15   _____/

16   <u>Introduction</u>

17              Plaintiff, a state prisoner proceeding pro se and in forma pauperis, seeks relief

18   pursuant to 42 U.S.C. § 1983.  Pending before the court are plaintiff's two motions to compel

19   further responses/production of documents, filed on, respectively,  6/06/08, and 7/24/08, to both

20   of which defendants have filed their opposition and after service of each of which plaintiff filed a

21   reply.

22              This motion shows the non-fit of ordinary civil case procedures to a prisoner civil

23   rights action.  The resources that could be spent elsewhere for many in prison for substantive

24   needs are instead expended in a search for documents requested by one prisoner in one case.

25   Courts generally labor under the misconception that there is no end of resources, both monetary

26   and time, that can be applied to individual prisoner actions.  On the other hand, without court

                                             1

oversight, or even the specter thereof, many legitimate claims of constitutional deprivation would never see the light of day in that the prisons have seemingly instituted no effective way to police day-to day, administrative misconduct. An institution without external oversight is often an institution which becomes a law unto itself, and at times a bad law. Regardless, the undersigned is tasked with applying general discovery rules, and the following order attempts to do so.

Complaint

This action proceeds on the original complaint, filed on 10/20/06, as modified by the Order, filed on 3/03/08, adopting the Findings and Recommendations, filed on 2/04/08. At this point, plaintiff proceeds upon claims for money damages against the following defendants employed at two state prisons: 1) Corcoran State Prison Employees: D. G. Adams, D.D. Ortiz, K. Daviega,[1] J.A. Diaz, T. Galaviz, B. Streeter, P. Chatham, J. Hill, R. Hubach, A. Morrison, J. Diaz, S. Tellerico; and 2) High Desert State Prison Employees: D. Vanderville, B. Epperson, J. Owen, D. Hellwig. Plaintiff expressly states that he has exhausted his administrative remedies as to "all facts" presented in his complaint as of September 22, 2006. He also alleges that his State Board of Control claim was denied on September 27, 2006. Complaint, p. 16.

Plaintiff was incarcerated at High Desert State Prison (HDSP) at the time of filing his complaint.[2] He alleges that defendants at both Corcoran State Prison (CSP) and HDSP "collectively conspired" to violate his rights under the First and Fourteenth Amendments. Id.

Plaintiff contends that his conflict with defendants D.G. Adams, D.D. Ortiz, K. Daviega, J.A. Diaz, T. Galaviz, B. Streeter, P. Chatham, J. Hill, R. Hubach, A. Morrison, J. Diaz and S. Tellerico started following his arrival at CSP on December 17, 2004. From then until March 21, 2006, plaintiff filed numerous complaints against these defendants and other CSP

---

[1] By reference to the answer filed on 3/10/08 (docket # 35), counsel for defendants appears to have settled on this spelling for this defendant's name.

[2] By notices of change of address, filed on December 27, 2007, and January 4, 2008, plaintiff informed the court of his transfer to California State Prison-Sacramento.

1  correctional officers (C/Os).  Id., at 17.

2         On December 6, 2005, plaintiff submitted a grievance to the above-

3  named defendants, alleging discrimination against African American inmates in compelling

4  them, including plaintiff, to double cell with African American prisoners only, forcing non-

5  affiliated African American inmates, including plaintiff, to double cell with those who

6  participated in active inmate gangs and by punishing plaintiff and other non-gang affiliated

7  African American inmates for serious rule violations committed by the gang participants.  Id.

8         On December 21, 2005, plaintiff was interviewed by defendant J.A. Diaz,

9  regarding the Dec. 6, 2005, grievance.  Defendant J.A. Diaz stated: "Mitchell, your ass is still

10  here!  I'm going to see to it that your ass gets transferred out of Corcoran because we're tired of

11  you filing complaints."  He went on to tell plaintiff that defendant Warden D. G. Adams told him

12  to interview plaintiff as to the Dec. 6, 2005, grievance.  Defendant J.A. Diaz noted that plaintiff's

13  complaint involved the potential lockdown of the entire African American inmate population

14  related to the Dec. 13, 2005, scheduled execution of "Crip gang leader, Stanley 'Tookie'

15  Williams," and discrimination against African American inmates in housing and punishment.

16  Id., at 17-18.

17         After plaintiff explained his complaint as to housing and punishment of African

18  American inmates, defendant J.A. Diaz noted that plaintiff had been filing complaints against

19  CSP administration every month since his arrival and informed plaintiff that he had just attended

20  a staff meeting with defendants Warden Adams and Associate Warden Ortiz, and several C/O's

21  from the yard "where we discussed your complaint filing and your assisting other inmates with

22  their complaint filing against staff."  Defendant J.A. Diaz told plaintiff that "we're" not going to

23  tolerate his continued complaint filing, that the method of housing and disciplining of African

24  American inmates would not change, and that plaintiff would be transferred from CSP.  Id., at

25  18-19.

26  \\\\\

Upon plaintiff's stating that he would file a complaint because defendant J.A. Diaz was violating his First Amendment rights, defendant J.A. Diaz informed plaintiff that he had no rights other than "what we give you." He also told plaintiff that he had instructed defendant Appeals Coordinators T. Galaviz and B. Streeter and all of his staff to no longer address plaintiff's complaints because plaintiff was going to be transferred from CSP. Id., at 19.

On Dec. 30, 2005, plaintiff filed a grievance (CSPC-3-06-00115) against defendant J. Hill for threatening plaintiff's safety/life. On Jan. 4, 2006, plaintiff was called to defendant J. Diaz's office, where J. Diaz was present along with defendants J.A. Diaz and S. Tellerico, and plaintiff was informed by these defendants that they were putting plaintiff up for transfer to "a 180 prison" because plaintiff had filed too many complaints and defendant Warden Adams had told them to transfer plaintiff out of CSP. Plaintiff informed these defendants that he had not gotten any disciplinary write-ups in the form of CDC-115's at CSP and asked why his security housing level was being upgraded and he was to be transferred to a "180 design prison." Id., at 20.

Defendants J. Diaz and Tellerico told plaintiff that "we don't want your kind here, so you're being transferred," while defendant J.A. Diaz referred back to his Dec. 21, 2005, interview with plaintiff, telling plaintiff that people like him "who file lawsuits and complaints are troublemakers and they have to go." Plaintiff replied that he would be filing a complaint against each of these individuals, to which defendant J. A. Diaz responded: "[T]his is why we're transferring you, to avoid having to respond to anymore of your complaints. We'll get rid of you and we won't have to respond to, or return any of your complaints you have pending." Id., at 21.

On Feb. 22, 2006, defendant J. Hill called plaintiff into his office about complaint no. CSPC -3-06-00652, which plaintiff had filed against defendant A. Morrison. Defendant Hill told plaintiff that he wanted to talk to him about the grievance against Morrison which plaintiff had filed contending that Morrison had confiscated and destroyed plaintiff's legal documents, as well as about CSPC-3-06-0115, which plaintiff had filed against defendant Hill for threatening

plaintiff's safety. Id., at 21-22.

Defendant Hill called defendant Morrison to his office and Hill told plaintiff to explain the circumstances giving rise to the grievance, whereupon plaintiff said that, on Nov. 12, 2005, defendant Morrison stopped plaintiff as he carried envelopes containing legal material and asked plaintiff what was in the envelopes. Plaintiff told Morrison that he was on the way to the law library to conduct legal research and to mail out his legal documents and showed Morrison the documents, whereupon defendant Morrison snatched up the documents and tore them up, telling plaintiff he could not have them. Plaintiff explained that they had been sent to him by the state attorney general's office and concerned a pending case of his and were not contraband. Morrison told plaintiff that the documents pertained to a lawsuit against correctional staff and that they were "'FLSA' time sheets" that plaintiff could not have. Plaintiff told Morrison that his having destroyed the documents sent by the attorney general's office before plaintiff had had a chance to address appeal issues violated his First and Fourteenth Amendment rights, to which Morrison replied that he did not care about plaintiff's rights and stated that since plaintiff had arrived, inmates had started filing lawsuits and staff complaints had increased. Id., at 22-23.

When Morrison tore up the documents, plaintiff informed him that he would file a complaint against him to which Morrison responded that he did not care "because don't you know that correctional staff at Corcoran don't find other correctional staff guilty of rule violations. Nothing is going to happen." Id., at 24.

When defendant Hill asked defendant Morrison if plaintiff's version of events had occurred as plaintiff told it, defendant Morrison stated "yes," and also said that he had told plaintiff they were tired of him and his complaint filing. When plaintiff told defendant Hill that in light of Morrison's admission that plaintiff expected Hill to hold Morrison accountable to departmental policy and procedure, defendant Hill "became enraged," approaching plaintiff with a clenched fist and shouting, inter alia, "I don't give a rat's ass about you or your complaints. We run this fucking yard the way we see fit and we don't have to answer to anyone. Now, I'm

5

telling you to drop your complaints, if you know what's good for you." Id., at 24-25.

Defendant Morrison then threatened plaintiff with a "blanket party," saying "if you keep on snitching and filing complaints, we're going to come an[d] pay your ass a visit dressed all in black and snatch your ass out of your cell at 2 or 3 o'clock in the morning and beat your ass! We've done this shit before and we'll do your ass too!" Both defendants laughed and warned plaintiff to drop grievances nos. CSPC-3-06-00115 and CSPC -3-06-00652, and were heard by unidentified inmates and correctional staff. The next day, Feb. 23, 2006, plaintiff filed a complaint against defendants Hill and Morrison for the incident of Feb. 22, 2006, no. CSPC-3-06-01022. Id., at 25-26.

On Feb. 25, 2006, defendant R. Hubach interviewed plaintiff about grievance no. CSPC-3-06-00115, telling plaintiff that defendants Warden Adams, Assoc. Warden Ortiz, and Captain Daviega, his supervisors, were tired of plaintiff's constant "snitching" and complaint filing and had told Hubach to make the complaint "go away." He told plaintiff that it could be in his "best interest" to withdraw CSPC-3-06-00115. When plaintiff protested, defendant Hubach told him that if the complaint was not dropped, plaintiff would be put in administrative segregation (ad seg), "and we will see to it [] that you don't go home on your release date." Plaintiff withdrew the grievance in fear for his life and of losing his release date. Defendant Hubach's statements were made in front of unidentified inmates and correctional staff. Id., at 26-27.

Plaintiff reports that on March 17, 2006, Corr. Counselor Smooth "became verbally hostile" with Inmate Wimberly, yelling because Wimberly had put his name in a report with which he did not wish to be associated, concerning the Feb. 24, 2006, incident in defendant Hill's office (concerning plaintiff's being admonished to drop CSPC-3-06-01022, about the earlier Feb. 22, 2006, incident in Hill's office).

On March 21, 2006, before plaintiff received any appeal responses to grievances CSPC-3-06-00115, CSPC -3-06-00652 or CSPC-3-06-01022 or his complaint relating to

classification and cell assignment of African American inmates, plaintiff was transferred to HDSP, with increased security level housing status, where he was housed on a 180 design yard for inmates with serious disciplinary problems. Upon his arrival at HDSP, he was forced into a holding cell for African American inmates only and all of his legal and personal property were contraband. Id., at 30-31.

Plaintiff was interviewed by three unnamed correctional lieutenants who told him that at HDSP all cell and job assignments, etc., were made by race. Plaintiff was told that there were no "'black cells'" on the 270 design yard and because of what had happened between himself and CSP correctional staff, he would be housed in a 180 design special housing unit for "'black inmates with serious disciplinary problems.'" Id., at 31.

On March 23, 2006, plaintiff was interviewed by three unit classification committee members (UCC), defendants D. Vanderville, D. Hellwig, and J. Owen, who told plaintiff that he was "a non-adverse transfer from Corcoran," but that there was a memo from CSP UCC members defendants J.A. Diaz, J. Diaz, and Tellerico, saying that plaintiff files complaints and lawsuits and must be housed at an increased security housing level and on 180 design special housing. Id., at 31-32.

Plaintiff was told by defendants Vanderville, Hellwig, and Owen that he would be housed on the C-Facility 180 yard because he was black, there were no open "black cells" on the 270 yard, and because Corcoran had so advised them. When plaintiff protested that he could be housed with any race, according to departmental policy and procedure, and that he had no disciplinary sanctions from CSP and did not display aberrant behavior to warrant increasing his security status from 270 to 180, he was told by these defendants that he was being upgraded because he filed "too many lawsuits and complaints on staff," and this way he could be confined to his cell for 23 hours a day which would prevent him from engaging in such activity. Id., at 32-33.

\\\\\

7

Plaintiff complained that the CSR[3] endorsed him for housing on a 270 design yard, to which defendants Vanderville, Hellwig, and Owen replied that they did not have to follow the endorsement, that plaintiff was black and no black cells on the 270 yard were open, that even if there were, he would not be housed there based on Corcoran's administration having said to upgrade his security housing level. Plaintiff said that when he had arrived at HDSP Receiving and Release (R&R), he had arrived with white, Hispanic, and Asian inmates who were taken to be housed on the 270 yard. In addition to being housed on a 270 design yard, he asked that he receive a clerk position equivalent to the job assignment as GED clerk he had had at CSP with a pay number. These defendants told plaintiff the other inmates who were sent to be housed on the 270 design yard were not black and did not file complaints and lawsuits against staff and that at HDSP, "everything is done according to race" and black inmates who sue correctional staff do not receive clerk assignments. Plaintiff complained of a violation of his First and Fourteenth Amendment rights for which he intended to file a complaint. Id., at 33-34.

Also, on March 23, 2006, plaintiff contacted his attorney, Robert A. Bailey, to enlist his help in securing his legal and personal property so that plaintiff could meet court deadlines. HDSP's Litigation Coordinator told his lawyer that she would track down plaintiff's legal property to give to plaintiff.

On March 30, 2006, plaintiff filed a 602 appeal no. HDSP-C-06-00807, concerning his transfer and the classification/cell assignment of African American inmates. On April 6, 2006, defendant B. Epperson escorted plaintiff to R&R, where much of his legal and personal property had been damaged and was confiscated, including, among other items, a cassette radio, new razors, a doctor-prescribed knee/ankle brace wrap, a pair of Nike shower shoes, a new hair brush, a pair of head phones, a pack of T-shirts, a pair of Reebok tennis shoes, a beard trimmer. Legal property confiscated included a Black's Law Dictionary, Deering's

---

[3] Classification Staff Representative.

desktop Federal Rules of Civil Procedure, all of plaintiff's case law and federal and state writs, writing pens, pleading paper, postage stamps and envelopes. Id., at 36-37.

Defendant Epperson and an unnamed staffmember told plaintiff his property was being confiscated because plaintiff had had his lawyer call and because he was housed on C-yard. Plaintiff said that he had been told by Corcoran R&R staff that none of his personal and legal property was contraband and that he had observed white, Hispanic and Asian inmates with some of the same items. Defendant Epperson told him that because he was black and housed on the C-Facility 180 design yard, he was not allowed the property. When plaintiff stated that he was filing a complaint alleging violation of his constitutional rights, he was told by Epperson (and the unnamed R&R staffmember) that at HDSP, things were done by racial classification and they did not answer to the courts. Id., at 37-38.

Plaintiff alleges that from March 20, 2006, until the present (the time of filing his complaint, on October 20, 2006), he had repeatedly submitted requests/complaints to no avail to CSP defendants Galaviz and Streeter, to respond to and forward his grievance nos. CSPC-3-06-00115, CSPC -3-06-00652 and CSPC-3-06-01022. Id., at 38-39.

Plaintiff alleges that Corcoran State Prison defendants, D. G. Adams, D.D. Ortiz, K. Daviega J.A. Diaz, T. Galaviz, B. Streeter, P. Chatham,[4] J. Hill, R. Hubach, A. Morrison, J. Diaz, S. Tellerico, conspired together to transfer him to High Desert in retaliation for his filing grievances and to avoid responding to or returning his pending appeals and increased his security housing level and confiscated and destroyed his property in violation of his First Amendment rights. Id., at 39. Defendants J.A. Diaz, K. Daviega, P. Chatham, J. Hill, R. Hubach, and A. Morrison conspired and threatened to physically harm him and place him in ad seg if he did not withdraw his grievances, which he did out of fear in violation of his rights under the First

---

[4] The court notes that to the extent this or any other claim against defendant Chatham arises from an alleged incident on 3/16/06, it has been dismissed. See Order, filed on 3/03/09, p. 2.

Amendment. Defendants D. G. Adams, D.D. Ortiz, K. Daviega, J.A. Diaz, T. Galaviz, B. Streeter, P. Chatham, J. Hill, R. Hubach, A. Morrison, J. Diaz, S. Tellerico, all threatened plaintiff with physical harm, with delaying his release date, with placing him in ad seg, and conspired to retaliate against him in the form of a prison transfer, and denied him full exhaustion of his administrative remedies. Id., at 40.

Defendants D. Vanderville, B. Epperson, J. Owen, D. Hellwig at High Desert State Prison all ratified the retaliatory conduct of the CSP defendants by refusing to take corrective measures and by increasing his security housing level, by confiscating and destroying plaintiff's personal and legal property, all at the request of the CSP defendants, in violation of plaintiff's First Amendment rights. Id., at 41.

Plaintiff alleges that all of the defendants "maintain segregationist policies," harboring a discriminatory animus against plaintiff and other African American inmates, requiring them to be double celled only with African Americans, and in separate holding cells, a claim of a violation of the Equal Protection Clause of the Fourteenth Amendment. Id., at 42-48. Plaintiff also alleges a state tort claim of negligence, contending that defendants inflicted physical, mental and emotional injuries upon him by their acts and omissions. He claims that he has lost wages, legal and personal property, and suffered "severe pain, humiliation, indignities...." Id., at 49-50.[5] Plaintiff also claims defendants' conduct was willful, wanton, malicious and oppressive. Id., at 52.

Plaintiff's Motions to Compel

*First Motion*

Plaintiff, in his first motion, seeks to compel production to his document production requests, set one, served on 3/31/08, upon defendants Adams and Vanderville. Plaintiff complains that defendants Adams and Vanderville in their responses to his requests are

---

[5] Plaintiff's putative "state tort claim torts in essence" is not readily decipherable, much less colorable. Id., at 51.

evasive and disingenuous and improperly invoke privileges.   First Motion to Compel (MTC1).

Plaintiff has identified the following requests for production for which he complains of

defendants' failure to produce: with respect to defendant Adams, these include request nos. 9, 10,

and 13 through 20; with regard to defendant Vanderville, plaintiff seeks production in response

to his requests numbered 9, 10, 11, 13 through 20.  MTC1, pp. 6-46.[6]

In their opposition, defendants sweep with an over-broad brush in appearing to

limit plaintiff's allegations to claims which solely implicate defendants for retaliating against him

for filing grievances (in violation of the First Amendment).  Opposition to MTC1 (Opp1).  While

it is true that plaintiff does allege retaliatory conduct on the part of defendants for plaintiff's

filing of grievances, plaintiff also alleges that defendants discriminated against him on the basis

of race in violation of the Equal Protection Clause of the Fourteenth Amendment.[7]

        *Discussion*

The scope of discovery under Fed. R. Civ. P. 26(b)(1) is broad.  Discovery may be

obtained as to any unprivileged matter "relevant to the claim or defense of any party...."  Id.

Discovery may be sought of relevant information not admissible at trial "if the discovery appears

reasonably calculated to lead to the discovery of admissible evidence."  Id.  The court, however,

may limit discovery if it "....is unreasonably cumulative or duplicative," or can be obtained from

another source "that is more convenient, less burdensome, or less expensive"; or if the party who

seeks discovery "has had ample opportunity by discovery ...to obtain the information sought"; or

if the proposed discovery is overly burdensome.  Fed. R. Civ. P. 26(b)(2)(i)(ii) and (iii).

At the outset in considering plaintiff's motions to compel, the court is mindful

that privileges are narrowly construed because they impede the full and fair discovery of the

_____

[6] The pagination of the court's electronic pagination system is referenced.

[7] See Johnson v. California, 543 U.S. 499, 125 S. Ct. 1141 (2005) (Under equal
protection challenge, state corrections department's unwritten policy of double-celling
new/transferred inmates in initial 60-day evaluation with cellmates of same race is subject to
strict scrutiny standard of review).

11

truth, <u>Eureka Financial Corp. v. Hartford Acc. and Indemnity Co.</u>, 136 F.R.D. 179, 183 (E.D. Cal. 1991), and that the party asserting the privilege has the burden to establish its applicability is an undisputed proposition, <u>see</u>, <u>e.g.</u>, <u>United States v. O'Neill</u>, 619 F.2d 222, 227 (3rd Cir. 1980). The Supreme Court has relatively recently reemphasized that privileges are not favored:

> The common-law principles underlying the recognition of testimonial privileges can be stated simply. "'For more than three centuries it has now been recognized as a fundamental maxim that the public . . . has a right to every man's evidence. When we come to examine the various claims of exemption, we start with the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule.'"

<u>Jaffee v. Redmond</u>, 518 U.S. 1, 9, 116 S. Ct. 1923, 1928 (1996) (<u>citing</u> <u>United States v. Bryan</u>, 339 U.S. 323, 331, 70 S. Ct. 724, 730, 94 L. Ed. 884 (1950) (<u>quoting</u> 8 J. Wigmore, Evidence § 2192, p. 64 (3d ed.1940)).

Privileges asserted by a government agency based on deliberative process or other governmental privileges have long been subject to procedural prerequisites:

> "There must be a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer. The court itself must determine whether the circumstances are appropriate for a claim of privilege . . ."

<u>United States v. O'Neill</u>, 619 F.2d, 222, 226 (3 Cir. 1980) (<u>quoting</u> <u>United States v. Reynolds</u>, 345 U.S. 1, 7-8, 73 S. Ct. 528, 532 (1953)). The procedural prerequisites apply to all forms of "executive" privilege. <u>See</u>, <u>e.g.</u>,<u>Yang v. Reno</u>, 157 F.R.D. 625, 632 (M.D. Pa. 1994) (state secrets and deliberative process privileges); <u>Martin v. Albany Business Journal, Inc.</u>, 780 F. Supp. 927, 932 (N.D.N.Y. 1992) (finding "informant's privilege" to be a governmental privilege). The claim should be made by a person in an executive policy position. <u>See</u> <u>Reynolds</u> 345 U.S. at 8 n. 20, 73 S. Ct. at 532 n. 20 ("[t]he essential matter is that the decision to object should be taken by the minister who is the political head of the department, and that he or she should have seen and considered the contents of the documents and himself have formed the

view that on grounds of public interest they ought not to be produced ..."). See also Scott Paper Co., 943 F. Supp. at 501-03 (1996) (requiring IRS Commissioner to invoke deliberative process privilege); Yang, 157 F.R.D. at 632-34 & n.4 (1994) (considering official status necessary to invoke privilege, collecting cases, and finding executive secretary of National Security Council could not invoke governmental privileges); Mobil Oil Corp. v. Department of Energy, 102 F.R.D. 1, 6 (N.D.N.Y. 1983) (official invoking the privilege may be an agency head or a subordinate with high authority). Some jurisdictions do not allow the agency head to delegate the authority to claim the privilege. Scott, 943 F. Supp. at 502. Other jurisdictions which allow the authority to be delegated require the delegation to be accompanied by detailed guidelines regarding the use of the privilege. Id. at 503. For purposes of prisoner litigation, the warden, assistant warden or appropriately delegated prison officials should be sufficient.

Regardless of who invokes the privilege, "the information for which the privilege is claimed must be specified, *with an explanation why it properly falls within the scope of the privilege.*" In re Sealed Case, 856 F.2d 268, 271 (D.C. Cir. 1988) (law enforcement privilege) (emphasis added). An official cannot invoke a privilege without personally considering the material for which the privilege is sought. Yang, 157 F.R.D. at 634.

### *Requests Directed to Defendant Adams*

In production request no. 9, plaintiff seeks "a complete unredacted/unedited copy of plaintiff's complete inmate housing assignment at Corcoran State Prison from December 17, 2004 to March 21, 2006."

Defendant Adams objects to this request as "vague, overly broad, and unduly burdensome." Defendant goes on to assert that, although not waiving the objections, "after reasonable inquiry, Defendant does not have any responsive documents in his possession, custody, or control." Plaintiff's declaration in support of MTC1, Exhibits (Exs.) A & B, pp. 19, 28. In opposition to the motion, defendant claims that he does not have possession, custody or control because even though he is the warden at Corcoran, he is being sued in his individual

13

capacity and as such does "not have a legal right on demand" to the documents sought. Opp1, pp. 4-5; defendant Adams' Declaration in support of Opp., Ex. A, ¶ 4. The court disagrees.

"Control is defined as the legal right to obtain documents upon demand." U.S. v. International Union of Petroleum and Indus. Workers, AFL-CIO, 870 F.2d 1450, 1451 (9th Cir. 1989); accord In re Citric Acid Litigation, 191 F.3d 1090, 1107 (9th Cir. 1999). While the defendant warden in his personal or individual capacity may not have custody of the documents at issue, because "control" is determined by authority, he has constructive possession, custody or control. The California Department of Corrections and Rehabilitation (CDCR) has not posited an objection as a third party. Defendant Adams has not shown that he does not have access to the documents and it is clear that he may obtain from CDCR whatever record there may be with regard to plaintiff's housing assignment while at Corcoran from 12/17/04 to 3/21/06. This information could be highly relevant to plaintiff's claim that he received his housing assignment solely with African Americans and only on the basis of his race in violation of his rights under the Fourteenth Amendment. If he has the ability to acquire the documents, defendant Adams must produce them. See In re Bankers Trust Co., 61 F.3d 465, 469 (6th Cir. 1995). Defendant Adams will produce the prison's records of plaintiff's housing assignments at Corcoran from 12/17/04 to 3/21/06, to the extent that they currently exist, within twenty days of the date of this order.

In request no. 10, plaintiff seeks a complete and unredacted copy of the Facility B "operational procedure" in Corcoran State Prison (CSP) from 12/17/04 to 3/21/06, to which defendant Adams objected "as calling for confidential documents, the release of which would endanger institutional safety and security," as well as on grounds of being vague, overbroad and unduly burdensome; defendant states that no responsive documents will be produced and that generally CSP does not have operational procedures "specific to particular housing units for general population inmates." Plaintiff's Dec., MTC1, Exs. A & B, pp. 11, 28.

\\\\\

The relevance of this request is not readily apparent insofar as the "operational procedure" may well encompass procedures not at all at issue in this case. Plaintiff contends that he needs the CSP Facility B operational procedure for the dates he was incarcerated there, 12/17/04-3/21/06, to show that the CSP defendants did not follow policy or procedure with regard to cell housing and integration and with regard to inmate contraband, by which he means confiscated or destroyed legal documents. MTC1, p. 10; reply, pp. 2-3. However, the inmate housing policy or procedure at Corcoran may well have relevance and the request so construed is at least reasonably calculated to lead to the discovery of admissible evidence. The procedure could itself arguably be problematic and plaintiff would be entitled to attempt to demonstrate that, or, if the procedure is appropriate, plaintiff could seek to demonstrate that the Corcoran defendants did not comply with it. Defendant's claims that release of documents related to the prison's operational procedure will implicate institutional security because, for example, an inmate in possession of the procedures could anticipate the timing and location of cell searches (Opp., p. 2), do not appear to be in any manner at issue if plaintiff is provided with any documentation for the relevant period, 12/17/04 - 3/21/06, that sets forth the policies and procedures for housing inmates at CSP, and, as modified, defendant Adams is to produce any such documentation within twenty days.

Plaintiff asks defendant Adams to produce the sign-in and sign-out sheets for the period from 11/12/05 to 3/21/06 for the following defendants: defendant Morrison (request no. 13); defendant Hill (request no. 15); defendants Galaviz, Streeter, Daviega, J.A. Diaz, and Chatham (request no. 17). Plaintiff's Dec., MTC1, Exs. A & B, pp. 11-12, 29-30. Defendant Adams, refusing to produce the documents, objects that these requests call for confidential documents, the release of which would endanger institutional safety and security and violate the defendants' right to privacy, and further objects that the requests are vague, overly broad and burdensome. Id., at 29-30.

\\\\\

1    Claiming that the time sheets are "public record," plaintiff, in somewhat vague

2    and circular reasoning, contends that he seeks this documentation as to these defendants to

3    support his allegations insofar as they will show that the defendants at issue were present "on the

4    days in question" related to his allegations.   MTC1, pp. 12, 15, 19.   To shore up his contention

5    that such records are not confidential, plaintiff attaches to his reply, as Ex. A to an additional

6    declaration, copies of two pages of time sheets he apparently received in discovery from

7    defendants in an unrelated prisoner pro se case wherein he states he is (or was) the plaintiff,

8    Mitchell v. Branham, Case No. O4-CV-0550 WQH (WMC).   In opposition, defendant continues

9    to maintain that these requests violate the defendants' privacy rights and are overly broad.  Opp1,

10   p. 3.

11           Plaintiff's rationale for seeking these documents appears thin.  The court agrees

12   with defendants that the requests are unduly burdensome and overly broad.  Moreover, plaintiff

13   does not really demonstrate how time sheets of these defendants are reasonably calculated to lead

14   to admissible evidence in support his allegations.  As defendant Adams asserts, if plaintiff was

15   present for the conversations with the various defendants he alleges that he had for certain times

16   which he does not adequately specify either in the motion or the requests by providing only a

17   broad time frame, he does not need to substantiate the conversations by way of defendants' time

18   sheets, which in any case, could not of themselves verify the conversations.  The motion as to

19   these requests will be denied.

20           Similarly, in his requests numbered 14, 16, and 18, directed to defendant Adams,

21   plaintiff asks for copies of the unredacted "post orders" for the period of 11/12/05 to 3/21/06 for

22   defendant Morrison (request no. 14); defendant Hill (request no. 16); and defendants Galaviz,

23   Streeter, Daviega, J.A. Diaz, and Chatham (request no. 18).   MTC1, pp. 11-20; plaintiff's Dec.,

24   MTC1, Exs. A & B, pp. 11-12, 30-31.  Once again, defendant Adams objected to these requests

25   on the grounds that they call for confidential documents the release of which would pose a

26   danger to institutional safety and security and as violative of  the defendants' right to privacy,

further objecting that the requests are vague, overly broad and burdensome.  Id., at 30-31.

In his motion plaintiff once again asserts that these documents are public record, are not confidential, would not jeopardize institutional security and "are routinely given to prisoner pro se litigants."  MTC1, pp. 14, 17, 21.  In his reply to the opposition in which essentially the same objections are posited (Opp., pp. 3-4), to shore up his reference to the claimed routine production of prisoner of pro se litigants, plaintiff attaches an exhibit to demonstrate he has previously received such documents.  Reply, Ex. B, pp. 14-22.  Post orders evidently set forth the daily duties and responsibilities of prison staff and, among other information, according to defendant Adams, "detail the institutional emergency response procedures and protocols for specific incidents, such as escapes and assaults."  Defendant Adams' Dec. in support of Opp1, Ex. A, ¶ 3.  Plaintiff contends that his requests are sufficiently specific as they are aimed at the period of time in which he was incarcerated at CSP, although this covers a period of months.  Such documents could only be arguably relevant to the degree to which they relate to the defendants' assigned duties and responsibilities regarding inmate housing.  Plaintiff does not allege in his motion that the prison practices or policies are at issue, indeed, he appears to contend the reverse in asserting that the documents requested will support his claims by showing how defendants failed to comply with their assigned procedures and responsibilities.  Notwithstanding the defendant's generalized assertions of confidentiality and privacy, the court will require production in response to these requests but only insofar as the "post orders" requested set forth any duties or responsibilities related to inmate housing assignments.  Defendant need not produce duties/responsibilities related to emergency response procedures and protocols for specific incidents, an issue of concern to defendant Adams as implicating institutional security, and should such procedures be included in post orders that include responsibilities related to inmate housing assignments, defendant may redact such information.  The motion as to these requests, nos. 14, 16, and 18, as modified, will be granted.

In request no. 19, plaintiff asks for the Corcoran memorandum entitled "Fact Finding" relating to 602 inmate appeal log numbers CSPC-3-06-00652, CSPC-3-06-0015[8] and CSPC-3-06-01022." MTC1, p. 20; plaintiff's Dec. Exs. A & B, pp. 21, 31.  In response to this request, defendant objects that the request calls for confidential documents that would violate the right to privacy and the release of which would put at risk institutional safety and security, in addition to asserting that the request is "vague, overly broad, and unduly burdensome."  MTC1; plaintiff's Dec. Ex. B, p. 31.

As plaintiff has claimed that he was retaliated against for having filed grievances in violation of his First Amendment rights and has identified these specific grievances as ones about which he was subjected to questionable treatment by some of defendants, a request for a memorandum tracking the history/progress of these grievances is at least arguably reasonably calculated to lead to the discovery of admissible evidence.  Defendant Adams does not provide any support in the opposition for their confidentiality, privacy, and safety risk objections and by no means meets his burden in positing such objections.  Nor is a request as specific as this one even arguably vague or unduly burdensome.  Simply asserting that the request does not come within this defendant's possession, custody or control is also unavailing, as addressed elsewhere. The motion will be granted as to this request and defendant Adams must produce any documentation responsive to this request within twenty days.

In request no. 20, plaintiff asks that defendant Adams produce "a complete, unredacted/unedited copy of the Corcoran State Prison Memorandum titled 'Custody Staff Complaint Litigation Tracking Log Numbers' relating to 602 inmate appeal log numbers CSPC-3-06-00652, CSPC-3-06-0015 and CSPC-3-06-01022." MTC1, p. 23; plaintiff's Dec. Exs. A & B, pp. 21, 31 .  In response, defendant posits the following: "[d]efendant objects to this request as being vague, overly broad, and unduly burdensome.  Without waiving these objections, after a

---

[8] Plaintiff identified this grievance in his complaint as "CSPC-3-06-00115," rather than ending with "015," as he has in his motion and requests.  See Complaint, p. 26.

reasonable inquiry, defendant does not have any responsive documents in his possession, custody or control." Plaintiff's Dec., MTC1, Ex. B, p. 32. In a declaration attached to his opposition, defendant Adams states that he does not have documents concerning inmate appeals within his possession, custody or control. Opp., p. 5, Adams Dec., ¶ 4. His representation in this regard appears to be premised on his averment that he does not "have a legal right" to demand such documents. Id.

Plaintiff's motion appears to be well-taken as to defendant's response to this request. While on the face of it, this court could not require a defendant to produce that to which he asserts he has no custody, possession or control, in this instance defendant Adams, who is the warden, fails to demonstrate, as noted above, that he does not have access to documents responsive to the requests and may not rely on the fact that he is sued only in his individual capacity to abjure that which is well within his capacity to produce. Nor does plaintiff here fall short of any claim that the production sought is not reasonably calculated to lead to the discovery of admissible evidence, and defendant does not make any such argument. Plaintiff seeks production of information surrounding any investigation as to the manner of processing specific grievances or complaints he filed at Corcoran, a subject arguably closely related to his claims of having been retaliated against for the filing of grievances. Defendant will be required to produce any documents responsive to this request that exists within CDCR or Corcoran State Prison records and the motion is granted as to this request.

### Requests Directed to Defendant Vanderville

Plaintiff moves for an order to compel production by defendant Vanderville, in response to request no. 9, wherein he asks for "a complete unredacted/unedited copy of plaintiff's complete inmate housing assignment at High Desert State Prison (HDSP) from March 26, 2006 to December 5, 2007." MTC1, p. 25. To this request, defendant Vanderville objected that the request was "vague, overly broad, and unduly burdensome," going on to assert that, although not waiving the objections, "after reasonable inquiry, Defendant does not have any responsive

1  documents in his possession, custody, or control."  Plaintiff's Dec., MTC1, Ex B, p. 34.  In

2  opposition, defendant Vanderville, much like defendant Adams in identical objections to a

3  similar request put to him (see above) declares that he does "not have a legal right on demand to"

4  such documents.  Defendant Vanderville's Declaration in support of Opp., Ex. B, ¶ 4.  He also

5  contends that being sued in his individual capacity forecloses his "legal right on demand" as to

6  the requested material.  Opp., p. 5.  Defendant Vanderville states that he is a Correctional

7  Counselor II at HDSP.  Id., at ¶ 1.  In the reply, plaintiff identifies Vanderville's Correctional

8  Counselor II position as a supervisory position that makes him third in the chain of command,

9  after the warden and associate warden.  Reply, p. 6.

10          Defendant Vanderville's contention that he does not have possession, custody or

11  control as to responsive documents is as unavailing as that of defendant Adams and for the same

12  reason.  The motion will be granted as to this request and defendant Vanderville will be directed

13  to produce the prison's records of plaintiff's housing assignments at High Desert State Prison

14  from 3/26/06 to 12/05/07, to the extent that they currently exist, within twenty days of the date of

15  this order.

16          Request no. 10 directed to defendant Vanderville mirrors the request of the same

17  number directed to defendant Adams and invokes the same arguments by the parties.  In the

18  request directed to defendant Vanderville, plaintiff seeks an unredacted copy of HDSP's Facility

19  C operational procedure for the period of time from 3/21/06 to 12/05/07.  MTC1, plaintiff's Dec.,

20  Exs. A & B, pp. 20, 36.   Because the same analysis applies herein, the court will modify the

21  request directed to defendant Vanderville for that defendant to provide plaintiff with any

22  documentation for the relevant period, 3/21/06 to 12/05/07, that sets forth the policies and

23  procedures for housing inmates at HDSP, and, as modified, will direct him to produce any such

24  documentation within twenty days.

25          In request no. 11, plaintiff asks defendant Vanderville for a complete and

26  unredacted copy of HDSP's Facility C operational procedure relating to Receiving and Release

from 3/21/06 to 12/05/07, to which defendant objects and refuses to produce any documentation on the grounds that the request is "vague, overly broad, and unduly burdensome." MTC1, plaintiff's Dec., Exs. A & B, pp. 20, 37. Among the allegations of plaintiff's complaint is the alleged discriminatory and retaliatory treatment to which he was subjected at HDSP's Receiving and Release by defendants Vanderville, Hellwig, and Owen with regard to where he was to be housed. These defendants allegedly told plaintiff the other inmates who were sent to be housed on the 270 design yard were not black and did not file complaints and lawsuits against staff and that at HDSP, "everything is done according to race" and black inmates who sue correctional staff do not receive clerk assignments. Complaint, pp. 33-34.

In the previous request, the court has directed that defendant Vanderville provide documentation that sets forth the policies and procedures for housing inmates at HDSP from 3/21/06 to 12/05/07; that direction is intended to include all HDSP housing procedures, including those implemented related to Receiving and Release. Thus, the motion will be denied as moot as to this request on that point and, to the extent that it seeks further operational procedure, it will be denied as irrelevant.

In request no. 13, plaintiff asks for a complete and unredacted copy of his housing assignment in Facility C at HDSP for 3/21/06 to 12/05/07. The court believes this request is encompassed within the documents the court has directed to be provided in response to request no. 9, directed to defendant Vanderville, and will deny the request as duplicative and moot.

As to request no. 14, plaintiff asks that Vanderville produce an unredacted copy of HDSP's Facility C "inmate 270 eligibility list for B Facility inmate housing" for the period of time from 3/21/06 to 12/05/07. MTC1, plaintiff's Dec., Ex. A, p. 20. Defendant interposes generalized objections based on confidentiality, the right to privacy and concerns about institutional security and objects to the request "as vague, overly broad, and unduly burdensome," but goes on to aver, without waiving objections, that following a reasonable inquiry, defendant had no responsive documents within his possession, custody or control.

21

While plaintiff objects to defendant's objections at some length (MTC1, pp. 3-32), he does not adequately clarify why he seeks the putative list that he unclearly identifies, nor how it could be reasonably calculated to lead to the discovery of admissible evidence with regard to his claims. The motion as to this request will be denied.

In request no. 15, plaintiff asks defendant Vanderville to produce the sign-in sheet for defendant Epperson for April 6, 2006; in request no. 16, he asks for Epperson's post orders for the same date, to which the defendant interposes objections identical to those asserted as to request no. 14, above. MTC1, plaintiff's Dec., Ex. A & B, pp. 20, 38. Although these requests at least have the merit of specificity as to date, they do not appear to be particularly germane. Within the allegations of his complaint, plaintiff states that defendant Epperson escorted plaintiff to R&R on 4/06/06, where plaintiff found much of his legal and personal property had been confiscated and damaged. Complaint, pp. 36-37. There does not appear on the face of it to be any need for plaintiff to further prove by way of documentation that defendant Epperson did actually escort him on that date, as this does not appear to be a point on which there would be any contention otherwise.

In request nos. 17 through 19, plaintiff asks for complete and unredacted copies of HDSP's "'Daily Record of Housing and Assignment Changes CDC Form 117," pursuant to CDCR Operations Manual section 52020.5.3 for Receiving and Release ('R&R') to 'B' Facility, and 'C' Facility to 'B' Facility'" from 3/21/06 to 12/05/07 (request no. 17); complete copies of HDSP's "'Inmate Transfers G A Form 154, pursuant to CDCR Operations Manual section 52020.5.4 for Receiving and Release ('R&R') to 'B' Facility, and 'C' Facility to 'B' Facility'" from 3/21/06 to 12/05/07 (request no. 18); and complete copies of HDSP's "'Inmate Daily Movement Sheet (DMS) pursuant to CDCR Operations Manual section 52020.5.5 for Receiving and Release ('R&R') to 'B' Facility and 'C' Facility to 'B' Facility'" from 3/21/06 to 12/05/07 (request no. 19). MTC1, plaintiff's Dec., Ex. A, p. 21. As to request no. 20, plaintiff also seeks, for the period from 3/21/06 to 12/05/07, a complete and unredacted copy of HDSP's CDC Forms

134 and 135, relating to departures and arrivals from Receiving and Release ('R&R') to 'B' Facility, and 'C' Facility to 'B' Facility.'" Id. To all of these requests, defendant again objects on the same grounds as set forth with respect to request no. 14, i.e., generally raising confidentiality, privacy and safety and security concerns, objecting to the vagueness, overbreadth and burdensomeness of the requests, and nevertheless averring, without waiver of objections, that defendant has no responsive documents within his possession, custody or control.

In his motion, plaintiff once again argues vociferously that defendant's objections are not well-grounded. MTC1, pp. 37-45. Plaintiff, however, other than contending generally, as he has almost exclusively throughout his motion, that production of the documents will support the allegations of his complaint, offers no substantive basis for a need for production of what may well be voluminous CDCR documents for a period of more than a year and a half. For the court to have determined the question of any relevance whatever, the undersigned has frequently reviewed the plaintiff's allegations because he simply makes no specific argument in the context of his requests for how the production he seeks is not unduly burdensome and, most important, is reasonably calculated to lead to the discovery of admissible evidence with respect to his claims. As it is not readily apparent to the court how these forms and documents could support his allegations, and as plaintiff fails to clarify how each might do so, the court will deny the motion as to these requests.

### Second Motion

Plaintiff seeks further response/production as to his second set of requests for production of documents, served on defendant Adams and Vanderville. Second motion to compel (MTC2).

### Requests Directed to Defendant Adams

As to defendant Adams, plaintiff identifies the following of his second set of requests for documents as the subject of this motion: requests numbered 1, 2, 5, 6, 7, 8. MTC2, pp. 9-17, 32.

As to request nos. 1, 2, 5, 6, 7 and 8, no order compelling production is warranted. In these requests, each linked to, and dependent on, a separate interrogatory propounded by plaintiff, defendant has asserted that, as to each, no documents were identified in response to the interrogatory. For example, in the convolutions attendant to request no. 1, plaintiff asks for unredacted documents identified in response to interrogatory 2; Interrogatory 2 asked for documents that were identified in response to Interrogatory 1, which, in turn, sought a detailed description of every fact that defendants at Corcoran, from 12/17/04 to 3/21/06, "were acting in accordance with department policy/procedure related to cell housing integration of African American inmates with Caucasian and/or Hispanic inmates on Facility 3B." Plaintiff's declaration in support of MTC2, Exs. A & B, pp. 8, 17, 49. In response, after asserting objections as to form (vagueness) and on claimed privileges, such as attorney-client and work product, defendant states: "[w]ithout waiving the objections, responding party responds that there are no documents identified in response to Interrogatory no. 2." MTC2, p. 9; plaintiff's Dec., Ex. B, p. 49. By this motion, plaintiff puts only the document production requests at issue. In his motion, plaintiff appears to be saying that, as an example, his request is meant to reference his "complete inmate housing assignment, CSP Daily Record of Housing and Assignment Changes, pursuant to CDC operations manual sections 52020.5.3 and inmate transfers GA-Form 154 CDC operations Manual Section 520205.4." MTC2, p. 10. If plaintiff had such specific documents in mind, he could have requested them and not engaged in circumlocution. More to the point is defendant Adams' argument that as to the interrogatories cross-referenced in the request for production, defendant does not contend that defendants at Corcoran for the period identified were acting in accordance with department policy with respect to integrating African American inmates with Caucasian or Hispanic inmates. Opp., p. 2. That being the case, defendant did not identify any documents that would support such a contention and thus produced no documents.

In arguing so vehemently for production, plaintiff may be not be seeing the forests for the trees, in that by the response and the opposition as to this request, defendant Adams could

be construed as making an admission that defendants were not in compliance with departmental policy with respect to integrating inmates. This analysis applies as well to defendant's responses to the other requests for production at issue where defendant Adams does not make the contention in response to the interrogatory for which plaintiff demands documentary support, i.e., that plaintiff lived in integrated housing at Corcoran. See, Opp., p. 3. That is, this reasoning could be applied with respect to plaintiff's set two requests for production served upon defendant Adams, i.e., regarding a claimed lack of information to support the contention that plaintiff lived in integrated housing at Corcoran from 12/17/04 to 3/21/06 (related to request no. 2); or insufficient information to support the contention that the Corcoran defendants forwarded plaintiff's specified appeals to plaintiff at HDSP or complied with procedure in this regard (related to request nos. 5 & 8); or insufficient information to support the contention that plaintiff's "confiscated documents" were disposed of per procedure (requests nos. 6 & 7). MTC2; plaintiff's Dec., Ex. B, pp. 39-45, 49-51. In any event, defendant Adams cannot be required to produce documents to support contentions that he does not make and, therefore, for which he does not identify supporting documents.

The motion as to each of these requests will be denied.

### *Requests Directed to Defendant Vanderville*

As to defendant Vanderville, plaintiff identifies the following of the second set of requests for production as the subject of his second motion to compel: 1 through 10. MTC2, pp. 17-32.

In his requests for production of documents no. 1, plaintiff asks defendant Vanderville to produce the documents identified in Interrogatory 2, wherein defendant identified the waiting lists of 270-eligible inmates following the response to Interrogatory 1, which asked for factual support for the claim in a first level appeal response to plaintiff's appeal log no. HDSP-C-06-00807, that HDSP Facility C program supervisors continually maintain a list of inmates eligible and approved for 270-design housing. MTC2, plaintiff's Dec., Ex. A & B, pp.

33, 54.  In the response to the objections, on grounds of vagueness and various privileges

including attorney-client and work product, defendant, without waiving objections, asserts that

he does not have any responsive documents within his possession, custody or control.  Id., at 64.

In request no.2, plaintiff seeks documentary support (cross-referencing Interrogatories 3 & 4) for

the first level appeal response to HDSP-C-06-00807, wherein it was set forth that the transfer of

inmates to Facility B was done "on a seniority date of eligibility, meaning first come first moved

based on bed space availability, ethnic balance and overall security and program needs."  Id., at

54, 64.  In response to Interrogatory no. 3, defendant, following objections, asserted that "inmates

were transferred to 270-housing based on bed space availability and compatibility of potential

cell-mates," and in Interrogatory response, no. 4, identified as the supporting documentation, the

270-eligible inmates waiting lists.  Id., at 54-55.   In request no. 3, plaintiff asks for documents

that identified in Interrogatory no. 6, which again identifies as supporting documentation, the

270-eligible inmates waiting lists.  Id., at 55, 64.  This response relates to Interrogatory no. 5,

which asks for the factual support of the first level response, again in HDSP-C-06-00807,

wherein it was stated that plaintiff's "request to be placed in the 270-design housing unit at

HDSP (Facility B) is partially granted in that you are on an approved waiting list to be moved to

Facility B when bed space is available."  Id., at 55.  As to each of the requests for production,

request nos. 1, 2 and 3, wherein the identified supporting document is the same, defendant asserts

that the request is vague, protected by attorney-client and work-product and "other" privileges,

but concludes that without waiving the objections, and after a reasonable inquiry, defendant does

not have any responsive document in his possession, custody or control.  Id., at 64.

Plaintiff has done a better job, at least as to these requests and this portion of his

second motion, in demonstrating with adequate clarity the relevance of the discovery that he

seeks from defendant Vanderville than he did in the first.  The 270-design eligibility lists cannot

be withheld on a claim of privilege where defendant fails so completely to meet his burden to

invoke such a privilege.  Defendants fail to provide an adequate basis for objection on grounds of

privacy or confidentiality or security concerns to withhold the document or documents at issue.

The Ninth Circuit, while rejecting a *per se* waiver rule that would deem a privilege waived for failure to produce a privilege log within the thirty-day time limit of Fed. R. Civ. P. 34, has held that "boilerplate objections or blanket refusals inserted into a response to a Rule 34 request for production of documents are insufficient to assert a privilege." Burlington Northern & Santa Fe etc. v. U.S.D.C. Montana (Kapsner), 408 F.3d 1142, 1149 (9th Cir. 2005). "Whether a responding party states a general objection to an entire discovery document . . . or generally asserts a privilege objection within an individual discovery response, the resulting 'blanket objection' is decidedly improper." Eureka Financial v. Hartford Acc. and Index., 136 F.R.D. 179, 182 (E.D. Cal. 1991). "[Blanket assertions of the privileges] are 'extremely disfavored.' . . . The privileges] must ordinarily be raised as to each record sought to allow the court to rule with specificity." Clarke v. American Commerce Nat. Bank, 974 F.2d 127, 129 (9th Cir.1992) (referring to the attorney client privilege) (citation omitted). The party asserting the privilege has the burden to establish each element. Id. "[T]his burden can be met only by an evidentiary showing based on competent evidence, and cannot be 'discharged by mere conclusory or ipse dixit assertions.' " Bowne of New York City, Inc. v. AmBase Corp., 150 F.R.D. 465, 470 (S.D.N.Y.1993) (quoting von Bulow by Auersperg v. von Bulow, 811 F.2d 136, 144 (2d Cir.1987)). See also In re Grand Jury Investigation, 974 F.2d 1068, 1070-71 (9th Cir.1992) (finding privilege log and affidavits met burden).

In his opposition, defendant Vanderville declares that he has produced all documents that he has in his possession, custody and control in response to the second set of requests, but specifically as to request nos. 1 through 3 of the second set of document production requests did not produce the waiting lists of 270-eligible inmates in 2006 because he no longer has the documents, does not know if they still exist or where to find them as he is not the custodian of those records. Opp., Ex. E, Vanderville Dec., ¶ 3. The implication is that the lists at issue may still exist within the control of a custodian of records. These lists are germane to

plaintiff's claims that he was retaliated and discriminated against in the manner of his housing at HDSP.  Defendant, who this court finds to be in constructive possession of any such documents, will be required to do more than simply assert that they may not exist and that he is not the custodian.  In re Bankers Trust Co., 61 F.3d at 469 ("legal ownership of the document is not determinative").  If such records are within the custody of the CDCR, production must be made within twenty days.

As to request no. 4, no further production will be required.  The court's review of the request and defendant's supplemental production of the September 1, 2005, memorandum at issue therein is sufficient to moot this portion of the motion.[9]  Opp., Ex. E, Vanderville Dec., ¶ 4.

As to plaintiff's requests for production numbers 5 through 10, no production will be required.  Defendant Vanderville correctly asserts that plaintiff is not entitled to production as to requests which correspond to interrogatories that exceed the 25-interrogatory limit.  Opp., p. 3. The court has no record of plaintiff seeking leave to exceed the limit.  See Fed. R. Civ. P. 33(a)(1).  Plaintiff does not dispute that his interrogatories to defendant Vanderville exceed the interrogatory limit, but contends in his reply to the opposition that he has good cause for doing so because they are relevant and relate to material facts.  Reply, p. 24.  However, the court will not retroactively grant leave to exceed the interrogatory limit, leave to which plaintiff too easily presumes he is entitled.  Moreover, the court's review of these requests' responses demonstrate that, notwithstanding defendant's objections to the related interrogatories on the basis, inter alia, that plaintiff had exceeded the number of interrogatories, defendant went on to assert in related interrogatory answers that defendant did not make the contention at issue and therefore identified no supporting documentation.  MTC2, plaintiff's Dec., Exs. A & B, pp. 24-26, pp. 56-60, 65-67;

[9] Although the court cannot locate this document among the exhibits produced in opposition, the undersigned will accept defendant Vanderville's declaration under penalty of perjury that he has produced it.

28

Opp., Exs. C & D, pp. 39-41, 47-51. The court cannot order production of documents to support a contention which the defendant does not make. The motion to compel production as to request nos. 5 through 10 will be denied.

Accordingly, IT IS ORDERED that:

1. Plaintiff's motion to compel production in response to his first set of requests for production, filed on 6/06/08 (docket # 47), is granted in part and denied in part, as follows:

A) As to defendant Adams:

i) Granted as to his request nos. 9, 19 and 20, and also, but only as modified above, to request nos. 10, 14, 16 and 18;

ii) Denied as to request nos. 13, 15, and 17.

B) As to defendant Vanderville:

i) Granted as to request no. 9, and also, but only as modified above, to request no. 10;

ii) Denied as to request nos. 11, 13 through 20.

2. Plaintiff's motion to compel further production in response to his second set of requests for production, filed on 7/24/08 (# 54), is denied as to defendant Adams, and, as to defendant Vanderville, it is granted as to request nos. 1, 2, and 3, and otherwise denied; and

3. Defendants must provide the discovery compelled herein, and file in this court proof of service thereof, within twenty days of the date this order is filed.

DATED: 03/05/09                                    /s/ Gregory G. Hollows

_____
GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:009
mitc2321.mtc